## SULLIVAN v. MILLEDGE.

Circuit Court, Dade County.

October 31, 1949.

November 30, 1949.

Hunt, Salley & Roman, Miami, for plaintiff.

A. Frank Katzentine, Henry K. Gibson, Robert H. Givens, Jr., William A. Lane, Albert B. Bernstein, Nicholas Hodson, E. Clyde Vining, Lyle D. Holcomb, David W. Dyer, R. D. Maxwell, Jr., L. S. Bonstell and Melbourne L. Martin, all of Miami, for defendant.

CHARLES A. CARROLL, Circuit Judge.

It appearing that this suit, which is one by a county official for a declaratory decree to determine his official status and duties under a certain statute, was filed and lodged in the usual course in one of the divisions of this court, that thereafter the plaintiff moved that the cause be heard by four judges of this court as a group and an order was made herein on April 11, 1949 for the cause to be considered, tried and determined by four judges of this court including the undersigned (which order was amended by an order dated July 15, 1949 providing for the trial to be before five judges sitting en banc), and it appearing from an inspection of the constitutional provision relating to this court and the authorities on the same and the point generally that it would constitute reversible error for two or more judges of this court to hear and determine such a case in group or en banc, the undersigned has concluded that he will recuse himself.

As the basis for recusing myself in this cause is that I am satisfied the group or en banc action in which I would otherwise participate would be an error, I feel it is appropriate, if not necessary, that I should set forth the reasons for that conclusion.

Article 5, section 43 of the Florida constitution, applying to this court, follows:

The Legislature may from time to time and as the business of any circuit requires, provide for the appointment of one or more additional Circuit Judges for such Circuit. Each such additional Circuit Judge shall be appointed by the Governor and confirmed by the Senate, and hold office for six years, and shall receive the same salary and allowances for expenses as other Circuit Judges. He shall have all the powers and perform all the duties that are or may be provided or prescribed by the Constitution or by statute for Circuit Judges, and all statutes concerning Circuit Judges shall apply to him. Wherever there are two or more Circuit Judges appointed for a Circuit the business may be divided among the Circuit Judges having jurisdiction in the Circuit and in any County in the Circuit as may be prescribed by law, and where no provision has been made by law, the distribution of the business of the Circuit between Circuit Judges of the Circuit, and of any County in the Circuit, and the allotment or assignment of matters and cases to be heard, decided, ordered, tried, decreed or adjudged, shall be controlled or made when necessary by the Circuit Judge holding the commission earliest in date. . .

It will be noted, first, the above section of the constitution provides that *each* circuit judge (in counties having more than one) — "shall have all the powers and perform all the duties that are or may be provided or prescribed by the Constitution or by statute for Circuit Judges." In State ex rel Brooks v. Freeland (Fla.), 138 So. 27, those words were construed to mean that action or decision by *one* judge is the action or decision of the *court*. See also on this point Meyer v. Nator Holding Co. (Fla.), 136 So. 636, 638, infra; United American Ins. Co. v. Oak (Fla.), 166 So. 547, 551; and City of Coral Gables v. Blount (Fla.), 178 So. 554, 555.

So the plaintiff's request to have his case heard by four or a "majority" of the number of the judges of this circuit appears to rest on the fallacy that a decision by several or more than half of the judges of this circuit, sitting en banc, would make a decision more binding—and that in order for it to be a decision of the *court* (rather than simply a decision of a *judge*) a majority of the judges in this circuit should try the case as a group.

Next, as to the above quoted section of the constitution, it should be noted there is no provision for group action or en banc action by the court—yet in the case of a supreme (appellate) court which customarily acts in group the manner of its group actions, its quorum, etc., is usually spelled out with particularity. Thus not only is there no express authority to sit in group or en banc, but it would be illogical to assume the power exists, as there is an absence of any provision for a "quorum"

or other necessary regulatory provisions for a group or an en banc trial. The theory of a "quorum" is inconsistent with the express constitutional provision that the ruling of one judge (and that would apply to each) is the ruling of the court.

This question of group or en banc action in a simple case such as this, which originated in this court, is not to be affected or confused by the fact that the legislature has from time to time provided for group action by this court in some types of appeals in which this court acts as an appellate court for certain lower courts. Even in appellate matters it has been held that the action of one judge of this court is the action of the court unless a statute provides that the appeal shall be heard by more than one. See Meyer v. Nator Holding Co. (Fla.), 136 So. 636, 638-9.

Next, it will be noted that the above section of the constitution makes provision for the distribution of the business *between* the judges of the circuit and in the county.

Those signposts of intention in the constitution all point away from group or en banc trials by the circuit court, and their cumulative directive force is compelling.

The meaning here ascribed to the constitutional section in question gives it practicality and simplicity. The meaning sought of it, as permitting or providing for group or en banc trials, breaks it down into jarring fragments, complicated by the absence of any essential directive provisions for any such group, or collective or en banc operation or trials by the court.

Some seventy-five years ago this precise question received full and repeated scrutiny in the Supreme Court of Illinois. There was involved the circuit court of Cook County (Chicago), and an equivalent court of that county, the superior court. As will be seen from a reading of the Illinois cases cited below, that state had a constitutional section almost identical to Florida's, which related to the equivalent courts in Chicago. In four cases, reported between volumes 70 and 78 of Illinois Reports, the matter was set at rest in that state, in accordance with the views I have expressed hereinabove. Scarcity of rulings on it in other states may as well be ascribed to the fact that the Illinois Supreme Court at such an early date pointed to the answer, precluding necessity elsewhere to insist otherwise.

Those earlier Illinois cases have been followed and confirmed by some modern rulings in Illinois. In Wayland v. City of Chicago, 15 N. E. 2d 516, 518, the Illinois Court said:

> It has also been settled in this state that in the circuit or superior court of Cook County it is error for more than one judge to participate in the proceedings in a given case, but each step taken in the cause should be by a single judge and this should appear from the record. Courson v. Browning, 78 Ill. 208. In Hall v. Hamilton, 74 Ill. 437, this court held that each of the judges of the circuit and superior courts of Cook County, under the Constitution, is invested with all the powers of a circuit judge and may hold court in a branch thereof, and that it is error for more than one to preside at the same time during the trial of any case, or to participate in any decision and the record should show that but one judge presides. See, also, Harvey v. Van DeMark, 71 Ill. 117.

In People ex rel Jonas v. Schlaeger, 45 N. E. 2d 30, 34-35, the Illinois Supreme Court reaffirmed the propositions that the circuit court (under a constitutional provision such as ours) — (1) was not a group court, and (2) could not sit en banc or collectively, saying:

> We are not impressed with the argument that the office of judge of the superior court can be properly designated as a group office. The cases cited in which group officers are involved are of no aid in this case. While it is true that there are twenty-one judges provided for by the statute, they cannot be regarded as a group. They do not act collectively. Each occupies an independent office with equal powers and duties. They cannot and do not act jointly, or as a group. Wayland v. City of Chicago, 369 Ill. 43, 15 N. E. 2d 516; Courson v. Browning, 78 Ill. 208; Hall v. Hamilton, 74 Ill. 437; Harvey v. Van DeMark, 71 Ill. 117. They function separately and independently. Each holds a separate, although similar, office, in no sense jointly with, or dependent upon, the others. In their functions, powers and duties they are, in every sense, equal. Each functions as the superior court of Cook County. Wayland v. City of Chicago, supra. The case cannot therefore be disposed of on the principles announced in the cases involving group officers who function as one body and who must act jointly.

The earlier cases reasoned the matter out. In Jones v. Albee, 70 Ill. 34, 38-39, the following appears:

> When the constitution of 1870 was submitted for adoption, the circuit court of Cook County had one judge, and the Superior Court of Chicago three judges. By the 23d section or article 6, of that instrument, it is declared that the former court shall consist of five judges; that the latter court shall be continued, and called the Superior Court of Cook County; and it is provided that "the General Assembly may increase the number of said judges, by adding one to either of said

courts for every additional 50,000 inhabitants in said county over and above a population of 400,000. The terms of office of the judges of said courts hereafter elected shall be six years".

By the 24th section of the same article, it is provided as follows: "Any judge of either of said courts shall have all the powers of a circuit judge, and may hold the court of which he is a member. Each of them may hold a different branch thereof at the same time." When all of these provisions are considered together, it is apparent the intention of the framers of the constitution was, to give the several judges of these respective courts identically the same powers and place them precisely upon the same footing; and that it was not the intention to make these courts otherwise than circuit courts, but composed of branches corresponding with the number of judges, each judge, while holding such branch, having all the powers of a circuit court. *The sitting of all or a majority of the judges of which the circuit court consists, as comprising the court and exercising its powers, was not contemplated, and, as we think, is not authorized by the constitution.* If such had been intended, with the power given to the legislature to increase the number of judges according to population, surely it would have been provided that some certain number should constitute a quorum. In section 2 of the same article, creating the Supreme Court, and declaring that it shall consist of seven judges, it is provided, "one of said judges shall be chief justice; four shall constitute a quorum, and the concurrence of four shall be necessary to every decision." No such provision is contained in either of the sections relative to these courts in Cook County. As we have said, the intention is manifest that the organization of these two courts, and the powers of the judges, should be identically the same, the only difference being that there are two more judges in one than in the other. It follows, from these views, that the practice of having the placita show that these courts were respectively held by all the judges of which they consist, is improper, because each judge is but a circuit judge, and each branch of the court, as held by the different judges, are circuit courts, held in the name of the court of which the judge holding it is a member. The placita should show the court was held by one judge, and he be the one before whom the cause was heard, who should sign the bill of exceptions in actions at law, sign decrees and certify to the evidence in suits in equity . . . . (Italics supplied)

The holding of that case was followed in Harvey v. Van DeMark, 71 Ill. 117.

Then came the case of Hall v. Hamilton, 74 Ill. 437, which contained the following clear and informative decision on the question (at pp. 439-441):

By the 23d section of Art. VI of our constitution the county of Cook is created a judicial circuit. And it provides that the circuit court of Cook County shall consist of five judges, until increased as therein provided. "The present judge of the Recorder's Court of the city of Chicago and the present judge of the circuit court of Cook County shall be two of said judges," and "The Superior Court of

Chicago shall be continued, and called the Superior Court of Cook County." The 25th section provides that the judges of the circuit and superior courts of Cook County shall receive the same salaries, payable out of the State treasury, as may be payable to the circuit judges of the State. It is also provided by the 24th section that "Any judge of either of said courts shall have all of the powers of a circuit judge, and may hold the court of which he is a member. Each of them may hold a different branch thereof at the same time."

From these constitutional provisions it is apparent that it was intended that each of the judges of both courts should be invested with all the powers of a circuit judge, and should, alone, and independent of the others, perform all the functions and discharge all the duties imposed by the constitution and legislative enactments, which pertain to the circuit judges of the State. We are unable to perceive any provision of the constitution which requires the judges of either or both courts to act collectively or even a quorum on any question, nor has it been required by the General Assembly. Whether the General Assembly might not require all or a majority of the judges of each court or both courts to sit in bank and determine all questions of law arising on pleadings, in arrest of judgment, and in the decision of all motions for new trials, it is not material to now consider, as no statutory requirement of the kind has been imposed. Although called by different names, the judges of each court are severally, under the law as it now stands, in fact, but circuit judges. (See Jones v. Albee, 70 Ill. 34.) And being circuit judges they should in all things conform to the laws, usages and practice governing the circuit courts of the State. When holding court each judge should hold a separate branch, and keep and in all things perform the duties of a circuit judge. The record should show that he alone was presiding, unconnected with either or any of the other judges of either court. The record of the business he may transact should state that he was present holding a branch court, and should not state that any other judge was present. It does not matter whether the journal of the proceedings of the several judges is entered in one or several books, so that it shows what is done by each.

One judge may settle a portion of the pleadings, or decide motions in a case, and another judge may settle other portions of the pleadings and decide other motions, and another judge may try the case, or all may be done by one judge, so the record shows what was done by each judge in the case. There is no law now in force authorizing all the judges to sit together, and try and decide cases. The law contemplates the action of but one judge, sitting at the same time, in the trial of a case. And it is error for more than one to sit at the same time on the trial of the case, but it is only an error, that may be waived or released.

In this case the placita to the record shows that three of the judges of the Superior Court were present, as also two circuit judges. If the record is true in this regard, then the decision of all questions was submitted to five judges instead of but one, as contemplated by the law. If that number sat and decided questions, they may have been decided by three of the five, and the decision different from what

it would have been had but one judge sat. Hence such an organization of the court is not such as litigants are entitled to have when their causes are tried.

The foregoing excerpt from the opinion in the Hall case shows the sameness of the constitutional provisions of Illinois and of Florida in the material respects; also the holding of the Illinois Court not only that cases are to be tried by one judge and not by two or more, but that the error of such group action cannot be avoided simply by reciting that one of the judges "presided".

It will be noted that the Hall case, among other things, ruled that the error results from the presence and participation at the same time of more than one judge in any stage of the case. Thus it is not permissible, according to these holdings, and under our constitution, for one judge to "preside" and appear as the one signing or making an order or decree, if other judges in fact sat in on the hearing or trial with him.

The Hall case shows that the error which results from a group or en banc hearing, trial or decision, is one that can be waived. Waiver by a litigant, if it occurs, will serve to preclude that party from later complaining—but the action involved is still erroneous.

The Illinois Court again dealt with the matter in Courson v. Browning 78 Ill. 208, at 211-212, as follows:

. . . The only question is, whether the order should not have recited and shown that the judge presided alone, and as the sole judge in the case. In the case of Hall v. Hamilton, Sept. T. 1874, it was held to be error in the trial of causes by the judges of the Superior Court, or circuit judges assisting them, to sit as a body or in bank, but that each step taken in a cause should be by a single judge, and that it should so appear from the record; that the various steps in a cause might be before a different judge; that one might settle a portion or all of the pleadings, another hear and determine a motion or motions in the case, and another try the cause, decide the motion for a new trial, and settle and sign the bill of exceptions, etc.; but the record should show what was done by each judge in the case, and that he acted alone in what was done.

In that case it was held not to be sufficient to state that one of the judges presided, as it did not appear but that he presided over the other three, and that all four were engaged in hearing and conducting the trial. Now, here, it appears, from the placita, that Joseph E. Gary, Chief Justice, and the other two Superior Court judges, and the circuit judge from the seventh judicial circuit, were all present,

and the judgment order shows that Judge Gary presided. *We have endeavored to find the means to avoid a reversal on this ground, but we can see no escape from the conclusion that all four judges were present trying the case, and that one of them was then presiding over the full bench, with a circuit judge superadded.* This is the clear and unmistakable meaning of the record. Had the clerk run his pen through the names of the two judges who did not preside, and omitted the name of the circuit judge from his blank placita, then the record would have shown what the law required to be done by a judge trying a case, and what would have been proper had Judge Gary presided alone in trying the case. But whatever the facts, this record states that four judges were present at the trial, and that one of them presided. (Italics supplied)

Thus it appears that participation in a group or en banc hearing or trial in this case would be contrary to law and result in reversible error in the case, for which reasons the case cannot be said to be properly before me. Whereupon, it is ordered that I hereby recuse myself herein.

GEORGE E. HOLT, Circuit Judge.

Application was made to the defendant circuit judge, Honorable Stanley Milledge, for the issuance of a search warrant for certain premises located in Miami Beach, and the appointment of an elisor to serve the warrant under section 47.12 F.S.A.—which reads as follows:

*Process; by whom served.*—All process, except that issuing from a justice of the peace court, shall be served by the sheriff or any constable of the county in the district in which it is to be served. Process of a justice of the peace court may be served by a sheriff of the county or by a constable. *A justice of the peace or a constable, in the respective counties, may serve all process in cases where the sheriff is interested, and in case of necessity the judge of the circuit court may appoint an elisor to act instead of the sheriff.*

All writs or process issued upon the institution of a suit which may be begun in a county where the defendant does not reside, and all writs, process, or notices requiring service upon a defendant not in the county where the suit is pending, may be served by the sheriff of the county or the constable of the justice district in which the defendant is to be found. (Italics supplied)

This was done. A raid was thereafter made by the court appointed and armed elisor—and several persons who were found there and who were alleged to have been unlawfully booking bets on horse races were arrested and taken into custody and charged with violation of the criminal laws of this state.

Thereafter a civil suit was instituted in this court by the owner of the building so raided wherein and whereby he sought to revoke the lease of the premises on the ground that they had been used for gambling activities, thereby violating one of the terms of the lease and forfeiting the tenant's right to possession thereof. The suit is still pending.

At the time of the appointment of the elisor the applicant therefor presented an affidavit which in substance stated that if the sheriff (or his deputies) or the justice of the peace or the constable of the justice of the peace's district in Miami Beach were given the warrant to serve, knowledge of the same would reach the operators of the premises before any arrest could be made.

Plaintiff in his bill seeks to have his authority with reference to the cited statute clarified and ascertained by a declaratory judgment of this court.

Defendant has asked that the bill be dismissed and on this motion the court has heard argument by all the interested parties.

There is little precedent to go on in determining the authority of the court to appoint an elisor. Only once in the history of Dade County has a previous appointment been made—and that was when an incumbent sheriff was indicted, and the clerk of this court was appointed an elisor to serve the warrant on him and arrest him, as the sheriff was obviously disqualified to arrest himself.

In the other known instance in the state, one cited at length by counsel for defendant, that of the "Club Diamond" located in Volusia County, an elisor was appointed by a visiting judge —and upon his departure the resident circuit judge refused to take action. A petition for a writ of certiorari was filed in the Supreme Court—and the Court denied certiorari without opinion. This is cited as authority by counsel for the defendant. The disposition of writs of certiorari by the Supreme Court in the past several years has not been of a character to warrant such assumption.

Without discussing the proposition (and it has some merit) that the statute involved is applicable only to civil proceedings because it is found in that section of the statutes relating solely to civil process, the question of the appointment of elisors in

criminal cases is one of great importance to the people of this county.

All laws should be enforced impartially without fear or favor. The sheriff of this county is its chief law enforcement officer. If he fails to do his duty recourse may be had under the laws of this state; for action on his bond; or by appeal to a higher authority for his removal for deficiencies in the administration of his office; or by the good old-fashioned American democratic method of replacing him at the ballot box.

From the facts and circumstances alleged in the bill and admitted to be true by the motion to dismiss, neither the sheriff or the justice of the peace or the constable of the justice of the peace's district were disqualified in any way to perform the functions of their constitutional offices. To oust elected, functioning and bonded officials in this manner invites chaos, revolution and bloodshed.

There is no provision in the law of this state whereby a person wrongfully arrested, injured or killed by an elisor is protected in any wise. It was never intended by the legislature, nor can such intention be derived from the statute, that such court-appointed elisors could supplant the duly elected and acting chief law enforcement officer of the county. To follow such contention to a logical conclusion, whenever any person became aggrieved at the sheriff and application made for the appointment of an elisor, either for civil or criminal purposes, there would be so many elisors running around the country, with guns in their pockets, invading the private property of our citizens, they would be reminiscent of Al Capps' "kigmys" of comic strip fame.

The foregoing may be true in a proper case. We do not and cannot decide the validity of the appointment of the elisor in this case. It is our conclusion that even though the bill is drawn in the form of an application for a declaratory decree (and Florida has the most liberal laws pertaining to the same in the entire nation) it is none the less a direct attack upon the official actions of a judge of this court.

Regardless whether one agrees or not with the official acts and functions of a judge, his acts when performed in his judicial capacity cannot be questioned by any proceeding brought in this court with such judge a party defendant.

As we are of the opinion that we are without jurisdiction to hear and decide this matter, it is ordered, adjudged and decreed that defendant's motion is sustained and the bill dismissed.

N. VERNON HAWTHORNE and WILLIAM A. HERIN, Circuit Judges.

This court being without jurisdiction, we concur in the judgment of dismissal.

MARSHALL C. WISEHEART, Circuit Judge.

I did not hear the argument. I did read the record and the briefs submitted. From this consideration I concur and join in the foregoing opinion and order.